# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | § § § | |
| Plaintiff, | § § | Civil Action No. 09-1540 |
| v. | § § | |
| PRIVATEFX GLOBAL ONE LTD., S.A., 36 HOLDINGS LTD., ROBERT D. WATSON AND DANIEL J. PETROSKI, | § § § § § | |
| Defendants. | § § | and |
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | Civil Action No. 09-1541 |
| v. | § § § | **(CONSOLIDATED)** |
| PRIVATEFX GLOBAL ONE LTD., S.A., 36 HOLDINGS LTD., ROBERT D. WATSON AND DANIEL J. PETROSKI, | § § § § | |
| Defendants. | § § § | |
| THOMAS L. TAYLOR III, SOLELY IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR PRIVATEFX GLOBAL ONE LTD., SA, ET AL., | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| TMAHC, INC., d/b/a CAMELOT REALTY GROUP, THOMAS CERVONE, and MELANIE CERVONE, | § § § § | |
| Relief Defendants. | § | |

**RECEIVER'S MOTION FOR ORDER APPROVING SETTLEMENT**

## RECEIVER'S MOTION FOR ORDER APPROVING SETTLEMENT WITH TMAHC, INC., d/b/a CAMELOT REALTY GROUP, THOMAS CERVONE AND MELANIE CERVONE

Thomas L. Taylor III (the "Receiver"), Court-appointed Receiver for Defendants PrivateFX Global One Ltd, SA ("PrivateFX"), 36 Holdings Ltd., Robert D. Watson and Daniel J. Petroski, and entities owned and/or controlled by them (the "Defendants"), respectfully moves the Court for an Order approving the proposed settlement with TMAHC, Inc., d/b/a Camelot Realty Group ("Camelot"), Thomas Cervone and Melanie Cervone (collectively the "Cervone Defendants").

### I. BACKGROUND

**A. The Commissions' Consolidated Enforcement Actions**

On May 21, 2009, the Commodity Futures Trading Commission ("CFTC") and the Securities and Exchange Commission ("SEC") filed, and the Court consolidated, Civil Action Nos. 09-1540 and 09-1541 styled, respectively, *U.S. Commodity Futures Trading Commission v. PrivateFX Global One, Ltd., 36 Holdings Ltd., Robert D. Watson and Daniel J. Petroski* and *Securities and Exchange Commission v. PrivateFX Global One, Ltd., 36 Holdings Ltd., Robert D. Watson and Daniel J. Petroski* (the "Enforcement Action"). The CFTC and SEC alleged that PrivateFX, by and through its agents, 36 Holdings, Ltd., Robert D. Watson and Daniel J. Petroski had orchestrated an off-exchange foreign currency ("forex") trading scheme in which they solicited millions of dollars from investors to purchase shares of PrivateFX which, in turn, traded forex for the purported benefit of the common enterprise. On the same day, the Court entered

the Order Appointing Receiver, subsequently modified[1] (the "Receivership Order"), appointing the Receiver over the Defendants and related entities owned or controlled by them. The mandate of the Receiver is to marshal the assets of the Receivership Estate in order to preserve the Estate and maximize disbursements to defrauded investors at the conclusion of the Receivership. *See* Receivership Order, ¶5.

The Receiver is charged with recovering assets traceable to the Estate that were illegitimately and/or fraudulently transferred from the Estate to individuals and/or entities that have no legitimate ownership interest in the transferred assets. To accomplish this mandate, the Receiver must take control of all assets traceable to the Estate, wherever they are located, including assets wrongfully taken or received from investors through fraud. Where necessary, the Receiver must initiate legal proceedings to affect such recoveries. Receivership Order, ¶5(i).

### B. The Cervone Litigation

On March 25, 2010 the Receiver filed a third-party complaint in the Enforcement Action, Dkt. 99, against the Cervone Defendants. On September 28, 2010 the Receiver filed unopposed an Amended Complaint, Dkt. 131, to correct the initial naming of TMAHC, Inc. as Camelot Realty Group, Inc. pursuant to FRCP 15(a)(2) (the "Complaint").

As alleged in the Complaint, the Cervones are investors in the PrivateFX investment scheme detailed in the Enforcement Action. The Receiver and the forensic accountants engaged by him discovered in their investigation of the PrivateFX forex scheme that the Cervones sought and obtained a cash loan to Camelot of $300,000 from the Defendants in early 2009 purportedly

---

[1] Specific citations to the "Receivership Order" refer to the Order Appointing Receiver, Dkt. 13. The Order Granting Receiver's Motion to Modify Order Appointing Receiver, Dkt. 51, modified the Receivership Order to include numerous additional entities in the Receivership Estate.

to finance the purchase of a $450,000 high-rise luxury condominium at The Royalton building, Unit 1805, at 3333 Allen Parkway in Houston, Texas.

The PrivateFX entities were not in the business of making investments in residential real estate and as a matter of corporate formality, probably not authorized to do so. The Cervones had been unable to secure financing from a commercial lender for their real estate investment and prevailed upon the Defendants to advance them money. As further alleged in the Complaint, the Cervones sought, in substance, to circumvent the notice period required before PrivateFX investors were permitted liquidate their accounts. The Cervones' purported PrivateFX account balance was approximately the amount they obtained through this "loan."[2]  Through the litigation against the Cervone Defendants, the Receiver sought the return of all funds transferred to the Cervone Defendants and traceable to the Receivership Estate.

## II. SETTLEMENT TERMS AND FAIRNESS ASSESSMENT

The Receiver engaged in negotiations with the Cervone Defendants prior to the filing of the Complaint and in the ensuing months following the commencement of litigation. After initiation of the lawsuit and as a part of the settlement negotiations, the Receiver required -- and the Cervone Defendants submitted to the Receiver -- a sworn financial affidavit disclosing their assets, liabilities, income and expenditures. Based upon the financial information provided by the Cervone Defendants under penalty of perjury, the Receiver determined that it would be unlikely that any significant judgment which might be obtained through summary judgment or trial on the merits, would be collectable.

---

[2] Per the Cervones' account statements at the time of the loan this amount necessarily contained fictitious "interest" purportedly earned in the Defendants' forex trading, which never actually took place.

RECEIVER'S MOTION FOR ORDER APPROVING SETTLEMENT                                                                  PAGE 4

Based on these considerations, the Receiver and the Cervone Defendants agreed to Settlement with the following terms: (1) payment to the Receivership Estate of $10,000 by the Cervone Defendants; (2) waiver by the Cervone Defendants of all claims against the Receivership Estate in the Court-approved claims process and Plan of Distribution by the Cervone Defendants; and (3) mutual releases of all other claims by the parties raised in the litigation against the Cervone Defendants.

In assessing the proposed Settlement, Receiver has analyzed (a) the Cervone Defendants' financial disclosures; (b) the claims against the Receivership Estate by the Cervone Defendants, which are to be waived; and (c) the time and expense of prosecuting the litigation against the Cervone Defendants; and (d) the collectability of any judgment which might be obtained against the Cervone Defendants.

As stated above, the Cervone Defendants' financial disclosures make clear that the Settlement amount is the largest likely amount which the Cervone Defendants could satisfy in settlement or judgment particularly in light of prior claims established against the defendants by taxing authorities. Furthermore, after consideration of the costs and risks involved in litigation, the Settlement is likely the only way for the Estate to benefit from the Cervone Defendant litigation.

The Cervones were investors in the PrivateFX Ponzi scheme and claimants upon the Receivership Estate; their claim amount calculated accordingly to the Plan of Distribution would have been $114,798. The Receiver has made no distribution to the Cervones because of the liability of the Cervones to the Receivership Estate. As a necessary condition of Settlement, the Receiver has required that the Cervones waive any and all claims they hold for investment losses against the Receivership Estate in the Court-approved Plan of Distribution. *See* Dkt. 151.

### III.   ARGUMENT AND AUTHORITY

Pursuant to the Receivership Order, the Receiver is directed and authorized to "[i]nstitute such actions or proceedings to … obtain possession and/or recover judgment with respect to persons or entities who received assets … traceable to the Receivership Estate." *Id.* ¶5(c).  The Receiver is also authorized to "compromise … such actions or proceedings … deem[ed] necessary and advisable to carry out [his] mandate …." *Id.* ¶5(i).  Furthermore, the Receiver is directed to "[p]reserve the Receivership Estate and minimize expenses in furtherance of maximum and timely disbursement thereof to claimants." *Id.* ¶5(j).

Consequently, while Court approval of the Settlement is not expressly required by the Receivership Order, the settling parties submit the Settlement for the Court's review in order to ensure full transparency and notice to the Court and the public.

As detailed above at §II, the proposed Settlement is the result of protracted negotiations between the Cervone Defendants and the Receiver in an effort to come to settlement terms that are fair and equitable to the Receivership Estate and all persons who have substantive claims against the Receivership Estate.  The Receiver also has been charged by the Court with minimizing the expenses incurred by the Estate in order to effectuate a maximum distribution to Estate claimants.  The Receiver has taken these varying mandates into consideration in negotiating and analyzing this proposed Settlement.  It is the Receiver's determination that the Settlement is fair, equitable and reasonable, and in the best interest of the Receivership Estate.

### IV.   CONCLUSION AND RELIEF REQUESTED

The negotiated settlement with the Cervone Defendants is one of the final steps toward achieving the goals of the Receivership and bringing it to a close.  If the proposed settlement is not approved, however, the litigation against the Cervone Defendants must proceed -- at a cost

likely greater than any eventual benefit which could be gained.   The Receiver therefore requests the Court find that the negotiated settlement with the Cervone Defendants is fair, equitable and reasonable, and in the best interest of the Receivership Estate, and approve the settlement in its entirety.

December 3, 2012							Respectfully submitted,

							THE TAYLOR LAW OFFICES, P.C.


							By: _____

							Thomas L. Taylor III
							Texas State Bar: 19733700
							taylor@tltaylorlaw.com
							Andrew M. Goforth
							Texas State Bar: 24076405
							goforth@tltaylorlaw.com

							4550 Post Oak Place Drive, Suite 241
							Houston, Texas 77027
							Tel: 713.626.5300
							Fax: 713.402.6154

							COUNSEL FOR RECEIVER


## CERTIFICATE OF CONFERENCE

Counsel for the Receiver hereby states that pursuant to Local Rule of the Southern District of Texas 7.1(D) he has conferred with counsel for the U.S. Commodity Futures Trading Commission and counsel for the U.S. Securities and Exchange Commission, and they do not oppose the Receiver's Motion.


							 /s/   Thomas L. Taylor III
							_____
							Thomas L. Taylor III


## CERTIFICATE OF SERVICE

On December 3, 2012, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the CM/ECF electronic filing system. I hereby certify that I have served counsel of record for the Defendants electronically or by other means authorized by the Court or the Federal Rules of Civil Procedure.


							 /s/   Thomas L. Taylor III
							_____
							Thomas L. Taylor III